IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–00771–KMT

T.T., a minor, by and through his mother and Next Friend, WENDY KANOHO
TORRES,

       Plaintiff,

v.

COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF YOUTH
CORRECTIONS,
JAMIE NUSS, Director of Gilliam Youth Services Center, in her individual capacity,
VERA DOMINGUEZ, Assistant Director of Gilliam Youth Services Center, in her
individual capacity,
DAISY SIERRA, in her individual capacity,
CRYSTAL GONZALEZ, in her individual capacity,
JOHN DOE, in his individual capacity,
MARISA VANDERPUIL, in her individual capacity,
GORDON DUVALL, in his individual capacity, and
SHARON PENNA, R.N., in her individual capacity,

       Defendants.

---

# ORDER

---

      This case comes before the court on Defendants Colorado Department of Human

Services, Division of Youth Corrections, Nuss, Dominguez, Sierra, Gonzalez,

Vanderpuil, Duvall, and Penna's "Motion to Dismiss First Amended Complaint" (Doc.

No. 23 [Mot.], filed May 31, 2017).  Plaintiff filed a response on June 21, 2017 (Doc. No.

26 [Resp.]), and Defendants filed a reply on June 30, 2017 (Doc. No. 27 [Reply]).

## STATEMENT OF THE CASE

Plaintiff T.T., a minor, proceeding by and through his mother and next friend, filed this case pursuant to 42 U.S.C. § 1983, asserting claims for Failure to Provide Medical Care and Treatment, Failure to Protect, and Failure to Train and Supervise. (*See* Doc. No. 18 [Am. Compl.], filed May 17. 2017.) Plaintiff also asserts claims for negligence and *respondeat superior*. (*See id.*) Plaintiff seeks money damages. (*Id.* at 16.)

During the time relevant to Plaintiff's claims, he was a fourteen-year-old who was a resident of Gilliam Youth Services Center ("Gilliam"). (*Id.*, ¶ 6.) Gilliam is juvenile detention facility located at 2844 Downing Street in Denver, Colorado, and is administrated by the Division of Youth Corrections and the Colorado Department of Human Services. (*Id.*, ¶ 9.) Gilliam incarcerates offenders who are ten to eighteen years old for crimes committed before their eighteenth birthdays. (*Id.*)

T.T. was admitted to Gilliam on October 23, 2015, following arrest on suspicion of third degree assault. (*Id.*, ¶ 16.) Following his admission to Gilliam, T.T. underwent one or more intake screenings performed by Gilliam personnel, during which he reported that "kids just tend to pick on me a lot." (*Id.*, ¶ 17.) Following evaluation, T.T. was identified as having impaired hearing, being "vulnerable to victimization," and as being on Zoloft. (*Id.*)

During his period of residence at Gilliam, T.T. repeatedly asked Gilliam staff members for time away from other residents. (*Id.*, ¶ 18.) Plaintiff believes T.T. made these requests because he was being targeted for verbal and physical abuse at the hands

of other residents. (*Id.*, ¶ 19.) Plaintiff alleges Gilliam personnel failed to investigate further and failed to recognize that T.T. was in physical and emotional danger. (*Id.*)

On November 1, 2015, T.T. was involved in a physical altercation with another resident. (*Id.*, ¶ 20.) Plaintiff alleges that Gilliam personnel were aware of the altercation and their persistent targeting of T.T. by other residents, yet they failed to provide T.T. with additional protection or to isolate him from other residents who might subject him to physical or emotional harm. (*Id.*)

On November 6, 2015, Plaintiff was involved in another altercation, during which Plaintiff was slammed on the ground on his back and struck multiple times on the left side of his head. (*Id.*, ¶ 22.) After the altercation, T.T. was taken to the medical ward where he was observed by Defendant Penna to have blood in the helix of his left ear. (*Id.*, ¶ 25.) T.T. informed Defendant Penna that he was nauseated and not feeling well. (*Id.*, ¶ 26.) Plaintiff alleges Defendant Penna did not take any steps to evaluate T.T.'s neurological condition. (*Id.*) Plaintiff alleges T.T. developed a severe headache, but the defendants ignored and belittled his complaints and attempted to return him to his room. (*Id.*, ¶ 30.) Defendant Penna authored a note stating the following:

> Resident observed in clinic for 30 minutes. No [nausea/vomiting] while in clinic. Left ear cleaned with half-strength H202 and dressed with Bacitracin. Resident given 600 mg Ibuprofen for pain. [Returned to cell] pm.

(*Id.*, ¶ 29.) Plaintiff alleges Defendant Penna authored an addendum to her earlier report in which she contradicted her earlier note, indicating she summoned paramedics after T.T. "vomited 3 or 4 times," "began complaining of head pain" and started "flailing

around the office" approximately 40 minutes after he had arrived in the medical ward. (*Id.*, ¶ 31.)

T.T. was emergently transported to Denver Health Medical Center, where he "had a blown left pupil, decerebrate posturing and a Glasgow Coma Score of 6 or 7/15." (*Id.*, ¶ 33.) T.T. was intubated, given medications, and diagnosed with a severe, ruptured subdural hematoma. (*Id.*) T.T. underwent a craniectomy and epidural/subdural hematoma evacuation on November 6, 2015, followed by cranioplasty on November 16, 2015. (*Id.*, ¶ 34.) T.T. spent twelve days at Denver Health Medical Center before he was discharged. (*Id.*, ¶ 35.) He then underwent months of in-patient rehabilitation and physical therapy at The Children's Hospital to address severe cognitive, psychological, and motor deficits he experienced as a result of a traumatic brain injury. (*Id.*)

## STANDARDS OF REVIEW

### A. *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff s case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A

court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint s "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**B.      *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

Defendants move to dismiss Plaintiff's negligence claim as barred by the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24–10–101 *et seq.* ("CGIA"). (Mot. at 6–7.)  Defendants move to dismiss Plaintiff's constitutional claims as barred by qualified immunity.  (*Id.* at 7–14.)

### A.    CGIA

Defendants argue that Plaintiff has not satisfied CGIA's notice provisions, and that such failure is fatal Plaintiff's negligence claim.  (*Id.* at 6–7.)

The CGIA "requires a person claiming to have suffered an injury by a public entity to file written notice within 180 days after the discovery of the injury, regardless of whether the person knew all of the elements of the claim." *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 923 (Colo. 1993). The notice requirement is a jurisdictional prerequisite to a tort action under the CGIA, and "failure of compliance shall forever bar any such action." Colo. Rev. Stat. § 24–10–109(1).  Nevertheless, the Colorado Supreme Court has held that the term "compliance" in § 24–10–109(1) is not to be interpreted as "strict compliance" but rather as "substantial compliance".  *Woodsmall*

*v. Reg'l Transp. Dist.*, 800 P.2d 63, 69 (Colo. 1990); *see also City & Cnty. of Denver v. Crandall*, 161 P.3d 627, 632 n.5 (Colo. 2007) (contrasting the notice's timeliness requirement, which is subject to strict compliance, with "the adequacy of the notice's contents [, which] is subject to a substantial compliance standard").

To substantially comply with the notice requirement, a claimant is required "to file written notice with the public entity and to make a good faith effort to include within the notice, to the extent the claimant is reasonably able to do so, each item of information listed in section 24–10–109(2)." *Woodsmall*, 800 P.2d at 69.

The notice must contain

(a) The name and address of the claimant and the name and address of his attorney, if any; (b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; (c) The name and address of any public employee involved, if known; (d) A concise statement of the nature and the extent of the injury claimed to have been suffered; (e) A statement of the amount of monetary damages that is being requested.

§ 24–10–109(2). The statement of the factual basis of the claim "must put the public entity on notice of the theory on which a forthcoming lawsuit will rest." *Miller v. Mountain Valley Ambulance Serv., Inc.*, 694 P.2d 362, 364 (Colo. App. 1984). However, "[t]he CGIA does not require the notice of legal grounds or claims for relief." *Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1195 (D. Colo. 1999), *aff'd*, 6 F. App'x 683 (10th Cir. 2001).

Defendants argue that Plaintiff's notice identifies the Division of Youth Corrections and Penna and only identifies the alleged failure to treat T.T. on November 6, 2015. (Mot. at 7.) Defendants contend that, as such, Plaintiff's notice does not comply

with § 24–10–109(2).  (*Id.*)  Plaintiff counters that the notice contained each of the

requirements set forth in the statute and that the notice

> was more than sufficient to alert the Colorado Department of Human
> Services, Director of Youth Corrections ("CDHS") and its employees that
> T.T. sustained serious injuries while in CDHS's care, that the
> circumstances surrounding the injuries were going to be the subject of a
> claim that could lead to litigation, and that CDHS would therefore need to
> conduct an appropriate investigation of the facts and circumstances of the
> incident.

(Resp. at 7.)

Plaintiff alleges in the First Amended Complaint that all of the defendants were

negligent by

> failing to protect T.T. from repeated attacks by other residents, failing to
> inquire further or otherwise respond appropriately when T.T. asked to be
> kept away from other residents, by failing to respond in a timely manner
> when T.T. was attacked on November 6, 2015, and by failing to provide
> appropriate medical care following the November 6, 2015 attack.

(Am. Compl., ¶ 73.)  The notice provides the following description of the "Factual Basis

of the Claims":

> [T.T] ("Claimant") suffered multiple injuries . . . after officials at [Gilliam]
> exhibited deliberate indifference to [T.T.'s] emergent medical needs.
> [T.T.] was assaulted by a fellow resident of Gilliam on or about November
> 6, 2015.  The assault caused multiple injuries and rendered [T.T.] in need
> of immediate, intensive medical care.  Gilliam personnel escorted [T.T.] to
> the medical center but, although [T.T.] had blood in his ear, staff failed to
> adequately examine or monitor [T.T.] for signs of serious injury.  After 40
> minutes had elapsed, [T.T.] began vomiting and collapsed, necessitating
> emergency transport to intensive care.  He has suffered significant
> cognitive impairments as a result of a severe brain hemorrhage that was not
> appropriately discovered, diagnosed and timely treated by employees
> and/or agents of Gilliam.

(Mot., Ex. B at 2.)

Plaintiff's allegation in the Amended Complaint that the defendants "fail[ed] to provide appropriate medical care following the November 6, 2015 attack" (*see* Am. Compl., ¶ 73) is akin to the allegation in the NOI that the "medical staff failed to adequately examine or monitor [T.T.] for signs of serious injury" (*see* Mot., Ex. B at 2). Thus, as to these allegations, the court finds the NOI substantially complied with the CGIA notice requirements, which "permit[] the public entity to conduct an investigation of the claim and abate a dangerous condition, to make fiscal arrangements for satisfaction of potential liability and settle meritorious cases, and to prepare defenses if it views the claim to be unmeritorious." *Crandall*, 161 P.3d at 632 (citing *City of Lafayette v. Barrack*, 847 P.2d 136, 139 (Colo. 1993)). *See Bennett v. Mahan*, No. 11–CV–01824–MSK–KMT, 2012 WL 4127307, at *5 (D. Colo. Sept. 19, 2012) (holding notice of claim asserting improper medical diagnosis and treatment substantially complied with CGIA notice requirements where complaint alleged a variety of assertions falling within the general rubric of improper medical diagnosis and treatment).

However, though Plaintiff's NOI is directed at Defendant Penna and other "employees and/or agents of Gilliam" who failed to "appropriately discover[ ], diagnose[ ] and timely treat[ ] T.T.," (*see* Mot., Ex. B at 2), the NOI specifically identifies *only* Defendant Penna as being involved in the medical care provided to T.T. on the date of the assault. (*See id.*) Moreover, according to the allegations in the Amended Complaint, there is no basis to have asserted claims against any of the other defendants for the alleged failures to provide adequate medical treatment to T.T. following the

assault.  (*See* Am. Compl. at ¶¶ 9–14 [identifying only Defendant Penna as being involved in the medical care and treatment of T.T. following the assault].)

Additionally, Plaintiff's notice fails to alert the defendants of *any* claims other than claims related to a failure to discover, diagnose, and timely treat T.T.  (*See* Mot., Ex. B at 2.)  Thus, the NOI did not "put the [defendants] on notice" of the theories of failure to protect T.T. prior to the assault or failure to train and supervise, *Miller*, 694 P.2d at 364, and, as such, did not permit the defendants to conduct an investigation, correct the condition, make fiscal arrangements, or to settle the claims against them, *Crandall*, 161 P.3d at 632.

Plaintiff argues, citing *Woodsmall*, that the defendants have not articulated any prejudice they have suffered or could suffer as a result of the alleged deficiencies in the notice.  (Resp. at 7.)  In determining whether there has been substantial compliance, a court "may consider whether and to what extent the public entity has been adversely affected in its ability to defend against the claim by reason of any omission or error in the notice."  *Woodsmall*, 800 P.2d at 69.  Thus, it is true that if a plaintiff makes an error in the notice, the plaintiff can still satisfy the CGIA requirements if the error "does not prejudice the public entity by adversely affecting its ability to defend against the claim." *Villalpando v. Denver Health and Hosp. Auth.*, 181 P.3d 357, 362 (Colo. App. 2007).

Plaintiff contends that, given the two-week time period T.T. was at Gilliam, "any investigation of the incident . . . would necessarily encompass T.T.'s entire tenure at Gilliam."  (*Id.* at 7–8.)  Given the limited scope of allegations provided by Plaintiff in the NOI, the court disagrees that an investigation necessarily would have included anything

other than whether the medical care provided to T.T. following the assault was sufficient. Moreover, any investigation, according to the allegations in the Amended Complaint, would not have revealed that any defendants other than Defendant Penna were involved in the medical care and treatment of T.T. following the attack.

Accordingly, Plaintiff's negligence claim asserted against Defendants Nuss, Domingeuz, Sierra, Gonzalez, and Duvall, and Plaintiff's negligence claims related to the defendants' failure to protect T.T., failure to investigate T.T.'s requests to be kept away from other residents, and failure to respond in a timely manner to the November 6, 2015, attack are dismissed for failure to comply with the CGIA's notice requirements.

### B.     *Eleventh Amendment Immunity*

Plaintiff has named the Colorado Department of Human Services, Division of Youth Corrections, as a defendant in this action.  State agencies are entitled to Eleventh Amendment immunity, absent a waiver.  *See generally Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) (the immunity conferred by the Eleventh Amendment extends to the state and its instrumentalities); *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1256 (10th Cir. 2007) (recognizing that agency of the state is entitled to Eleventh Amendment immunity).  Congress did not abrogate Eleventh Amendment immunity through § 1983, *see Quern v. Jordan*, 440 U.S. 332, 345 (1979), nor has the CDHS expressly waived its sovereign immunity.  *See Griess v. Colorado*, 841 F.2d 1042, 1044–45 (10th Cir. 1988).  The Eleventh Amendment prohibits suit against a state entity, regardless of the relief sought.  *See Higganbotham v. Okla. Transp. Comm'n*, 328 F.3d

638, 644 (10th Cir. 2003); *see also Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780–81 (10th Cir. 2008).

Thus, Plaintiff's claims against the Colorado Department of Human Services, Division of Youth Corrections, are dismissed for lack of subject matter jurisdiction.

**C.      *Qualified Immunity***

Plaintiff sues all of the defendants in their individual capacities. (*See* Am. Compl. at 1.)  Qualified immunity is an affirmative defense against § 1983 damage claims available to public officials sued in their individual capacities. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known. *Id.*  As government officials at the time the alleged wrongful acts occurred, being sued in their individual capacities, the defendants are entitled to invoke a qualified immunity defense to Plaintiff's malicious prosecution claim. *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials—entitled to assert a qualified immunity defense").  In resolving a motion to dismiss based on qualified immunity, a court looks at: "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted).  Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either

part. *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).  Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

### i. *Personal Participation*

Defendants argue that Plaintiff has failed to allege personal participation by some of the defendants in the some of the alleged constitutional violations.  (*See* Mot. at 10–11, 13–14.)

"Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (alteration in original) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).  To state a claim under Section 1983, " 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676 (2009)).  Allegations that generally refer to "defendants" are "not sufficient to show how [an individual] 'might be individually liable for deprivations of [a plaintiff's] constitutional rights.' " *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

Supervisor status alone is insufficient to support liability.  *Id.*  A supervisor is not liable under § 1983 for the actions of a subordinate unless an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation

or his failure to supervise. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Courts have explained that a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations. First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).

The Tenth Circuit in *Arocho v. Nafziger*, 367 F. App'x 942, 956 (2010), questioned whether the analysis in *Woodward* was still controlling in the wake of the Supreme Court's decision in *Iqbal*. The Tenth Circuit suggested, without deciding, that a showing of "purpose rather than knowledge is required" to impose liability on an official charged with violations arising from his or her supervisory responsibilities. *See also Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (in acknowledging that consensus "remains elusive" as to the meaning of the *Iqbal*'s discussion of supervisory liability under § 1983, the Tenth Circuit concluded that a plaintiff "must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well").

### a. General References to the Defendants

The court notes that, in the Amended Complaint, Plaintiff alleges that "Gilliam personnel ignored [ ] requests [to be kept away from other residents], failing to recognize or respond to the substantial risk that T.T. would be subjected to a severe physical attack at the hands of fellow residents."  (Am. Compl., ¶ 1; *see also id.*, ¶ 18.a.–j. [referring to T.T.'s requests of "Gilliam staff" for time away from other residents].)  Plaintiff also alleges "Gilliam personnel failed to investigate further and failed to recognize that T.T. was in physical and emotional danger" and "failed to take steps . . . that might have protected T.T. from serious physical injury."  (*Id.*, ¶ 19.)

These allegations, which are not attributed to any individual defendant, are "not sufficient to show how [an individual] 'might be individually liable for deprivations of [a plaintiff's] constitutional rights.' "  *Brown*, 662 F.3d at 1165.

### b. Defendant Penna and Sierra

In addition to the claim for Failure to Provide Medical Care and Treatment, Plaintiff asserts the Failure to Protect claim against Defendant Penna.  However, the Amended Complaint is devoid of *any* allegations against Defendant Penna that relate to anything other than T.T.'s treatment by her in the medical ward.  Thus, Plaintiff fails to allege Defendant Penna's personal participation in the Failure to Protect Claim.

Plaintiff asserts the Failure to Provide Medical Care and Treatment claim against Defendant Sierra.  Though Plaintiff alleges Defendant Sierra observed the assault on T.T. on November 6, 2015 (Am. Compl., ¶ 23); the Amended Complaint contains no

allegations regarding Defendant Sierra's failure to provide medical care or assistance following the incident.

Accordingly, the Failure to Protect claim asserted against Defendant Penna and the Failure to Provide Medical Care claim asserted against Defendant Sierra are dismissed for Plaintiff's failure to allege their personal participation in the constitutional violations, and these defendants are entitled to qualified immunity on the claims.

### c. *Defendants Nuss, Dominguez, Duvall, Gonzalez, and Vanderpuil*

In the Amended Complaint, Plaintiff states Defendant Nuss is the Director, and Defendant Dominguez is the Assistant Director of Gilliam. (Am. Compl., ¶¶ 9, 10.) Plaintiff states Defendants Nuss and Dominguez are responsible

> for the care and custody of the children confined at Gilliam; for establishing, administering and enforcing policies and procedures for Gilliam; for the maintenance and operation of the physical premises; for the hiring, firing, training and supervision of Gilliam staff; and other duties related to the maintenance and operation of Gilliam.

(*Id.*) Plaintiff states that Defendant Duvall

> was responsible for overseeing the provision of medical care to Gilliam residents, including decisions regarding staffing and training of medical personnel. More specifically, he was responsible in whole or in part for performing the intake screening on T.T. following his arrival at Gilliam. Upon information and belief, his recommendations informed subsequent decisions regarding T.T.s housing, interaction with other residents, and psychological and medical care.

Plaintiff states that Defendants Gonzalez and Vanderpuil are "staff members and/or supervisors" at Gilliam.

The sole allegation Plaintiff makes against Defendants Nuss, Dominguez, Duvall, and Gonzalez is that they "were aware of" a physical altercation between T.T. and

another resident on November 1, 2015, but "took no steps to provide T.T. with additional protection or to isolate him from other residents who might subject him to physical or emotional harm." (Am. Compl. at 20.) Additionally, Plaintiff alleges Defendant Vanderpuil was "responsible in whole or in part for performing the intake screening on T.T. following his arrival at Gilliam . . . and [her] recommendations informed subsequent decisions regarding T.T.'s housing, interaction with other residents, and psychological and medical care" and that she was aware of the November 1, 2015, altercation. (Am. Compl., ¶ 13, 20.)

Plaintiff seeks to hold these defendants liable on the basis of their supervisory status. Plaintiff makes no allegations related to the conduct of these defendants in the claims. Plaintiff does not contend that these defendants were personally involved in directing the allegedly unconstitutional conduct at issue in this case, nor does Plaintiff describe with any specificity how these Defendants had actual knowledge of the alleged constitutional violations, how they knew about any previous altercation involving T.T., or what they knew about the alleged November 1, 2015 altercation that could have led them to understand Plaintiff needed protection. *See Woodward*, 977 F.2d at 1400. Finally, Plaintiff has failed to show that Defendants Nuss, Dominguez, Duvall, Gonzalez and Vanderpuil, by virtue of their own conduct and states of mind, violated T.T.'s constitutional rights. *Dodds*, 614 F.3d at 1198.

Accordingly, all constitutional claims asserted against Defendants Nuss, Dominguez, Duvall, Gonzalez, and Vanderpuil are dismissed for failure to allege their personal participation, and the defendants are entitled to qualified immunity.

### ii.     First Claim for Failure to Provide Medical Care and Treatment

The court addresses Defendants' argument that Plaintiff's claim for failure to provide medical care and treatment should be dismissed as it pertains to Defendant Penna only, as the court has dismissed this claim to the extent it is asserted against the other defendants.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The court's analysis of Plaintiff's Eighth Amendment claims involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

As to the objective component, the court considers whether Plaintiff has been deprived of a sufficiently serious basic human need. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.' " *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

As to the subjective component of a deliberate indifference claim, the plaintiff must prove that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Defendants argue Plaintiff fails to satisfy both components of the Eighth Amendment claim. (*See* Mot. at 10–11.) As to the objective component, Defendant argues that T.T. "originally presented to Penna with a scratched ear[, which is] not so obviously serious that even a lay person would easily recognize the need for a doctor's attention." (*Id.* at 10.) Defendant then argues that Defendant Penna reevaluated T.T. when his "symptoms worsened and were sufficiently serious to require a doctor's attention." (*Id.*) However, there is no indication in the Amended Complaint that the blood in T.T.'s ear was from a "scratch." Moreover, Defendants fail to acknowledge that Plaintiff alleges, in addition to the presence of blood in T.T.'s ear, Defendant Penna failed to evaluate T.T.'s complaints of "nausea and [ ] not feeling well," instead tending to other matters until "T.T. began vomiting and convulsing." (Am. Compl. at 2.) Defendants also fail to acknowledge the allegation that "T.T. subsequently developed a severe headache and nausea while in the medical center, but [Defendant Penna] ignored and belittled his complaints and attempted to return him to his room." (*Id.*, ¶ 31.) The court finds that Plaintiff's allegations regarding T.T.'s bleeding ear and complaints of nausea, not feeling well, and severe headache, all of which allegedly were present for approximately one hour before he starting vomiting and convulsing, are, at the pleading stage, sufficient to satisfy the objective component.

As to the subjective component, Defendants argue that Defendant Penna did not disregard the risk to T.T., but rather "she responded appropriately by calling a 'Code

Blue' to the medical office and having paramedics respond." (*Id.*, ¶ 23.) Again, Defendants have overlooked Plaintiff's allegations that Defendant Penna ignored and belittled his complaints for an hour while she tended to other matters. These allegations are sufficient to satisfy the subjective component.

Defendants also argue that, "[w]hile [T.T.] may believe that Penna's [ ] treatment was inadequate, inadequate care is not deliberate indifference. (Mot. at 10.) Though it is true that "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation," *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999), the court does not believe this case involves "mere disagreement" between the parties about either a diagnosis or a prescribed course of care. *Accord Hunt*, 199 F.3d at 1223–24 (holding that a prisoner's claim that he was denied adequate and timely medical assistance did not reflect "mere disagreement with his medical treatment").

Having determined that the plaintiff has satisfied both the objective and subjective elements of an Eighth Amendment claim for failure to provide medical care and treatment, the court now addresses whether T.T.'s Eighth Amendment right was clearly established at the time of Defendant Penna's alleged misconduct." *Leverington*, 643 F.3d at 732. As stated *supra*, the burden to prove this rests with the plaintiff. *Dodds*, 614 F.3d at 1191.

> Plaintiff argues
>
> [I]t is clearly established in the Tenth Circuit that when a medical professional denies care after being presented with recognizable symptoms creating a potential medical emergency, the Constitutional rights of the injured party are violated. *Al-Turki v. Robinson*, 762 F.3d 1188 (10th Cir.

2014) (citing *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Further, "[w]hether a prison official had the requisite knowledge of a substantial risk [of serious harm] is a question of fact subject to demonstration in usual ways, including inference from circumstantial evidence." *Estate of Booker*, 745 F.3d at 430 (quoting *Gonzales v. Martinez*, 403 F.3d 1179, 1183 (10th Cir. 2005) & *Farmer*, 511 U.S. at 842); *see also Rife v. Okla. [Dep't] of Pub. Safety*, 854 F.3d 637, 647–48 (10th Cir. Apr. 17, 2017) (finding qualified immunity inapplicable when claimant presented with symptoms, including dried blood on his nose and dizziness, potentially indicating serious head injury).

(Resp. at 10.) Despite Plaintiff's references to law, Defendants argue that "Plaintiff does not cite clearly established law . . . particularized to the facts of the case." (Reply at 5.) The court disagrees and finds that both *Self* and *Al-Turki* provide clearly established law particularized to this case.

In *Al-Turki*, the Tenth Circuit explained that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted." 762 F.3d at 1194. The Court held that the defendant's "choice to ignore the repeated requests for medical help from an inmate who was experiencing severe abdominal pain potentially caused by a life-threatening condition [ ] would constitute a violation of the Eighth Amendment." *Id.* The court also noted that,

> [i]t has been clearly established in this circuit since at least 2006 that a deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Id.* (citing *Self*, 439 F.3d at 1232).

Here, Plaintiff alleges Defendant Penna is a trained, registered nurse who ignored T.T.'s bleeding ear and complaints of nausea, not feeling well, and severe headache, all of which allegedly were present for approximately one hour before he starting vomiting and convulsing. (*See* Am. Compl. at 1, 2 & ¶¶ 15, 31.) Plaintiff also alleges Defendant Penna belittled T.T.'s complaints and attempted to return him to his room. (*Id.*, ¶ 31.)

As such, Defendant Penna has failed to satisfy either prong of a qualified immunity analysis.

### iii.      *Second Claim for Relief for Failure to Protect*

Plaintiff asserts all of the defendants failed to protect T.T. in violation of the Eighth Amendment. (Am. Compl. at 12.) As this court has already held that this claim asserted against all of the other defendants must be dismissed, the court addresses this argument only as it pertains to Defendant Sierra.

A claim of failure to protect is evaluated under the Eighth Amendment, which, as stated above, has "both an objective and a subjective component." *Sealock*, 218 F.3d at 1209. The objective component of the test is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause. *Id.* To satisfy this component, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component "is met if a [defendant] 'knows of and disregards an excessive risk to inmate health or safety.' " *Id.* (quoting *Farmer*, 511 U.S. at 837). Under this component, the inmate must establish that the defendant had a sufficiently culpable state of mind in allowing the deprivation to take place. *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Benefield v.*

*McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)).  To be liable for unsafe conditions of confinement the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference."  *Farmer*, 511 U.S. at 837; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

Plaintiff makes only two assertions regarding Defendant Sierra:  (1) that she was aware of the November 1, 2015 altercation and failed to provide T.T. with additional protection, and (2) that she was monitoring the group that included T.T. on November 6, 2015, and observed another resident slam T.T. down on the ground on his back.  (Am. Compl., ¶¶ 20, 23.)  Plaintiff fails to specify how Defendant Sierra became aware of the November 1 altercation, what it was about the November 1 altercation that should have alerted Defendant Sierra that T.T. needed protection, or in what ways Defendant Sierra failed to provide additional protection.  With the single allegation that Defendant Sierra was aware of a previous altercation, the court cannot find that Plaintiff has sufficiently alleged that Defendant Sierra was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" or that Defendant Sierra drew such an inference that Plaintiff was at risk of another attack on November 6.  *Farmer*, 511 U.S. at 837; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

Because Plaintiff has failed to satisfy the subjective component of a Failure to Protect claim, the claim against Defendant Sierra is dismissed.

*E.*     *John Doe Defendant*

There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit.  *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir.1984); *Coe v. U.S. Dist. Court for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir.1982).  To the contrary, the Federal Rules provide that "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint, the title of the action shall include the names of all the parties . . . ."  Fed. R. Civ. P. 10(a).  Because anonymous parties are not permitted by the Federal Rules, and Plaintiff has not identified him, Defendant John Doe is dismissed from this civil action.

## CONCLUSION

Wherefore, for the foregoing reasons, it is

**ORDERED** that the "Motion to Dismiss First Amended Complaint" (Doc. No. 23) is **GRANTED** in part and **DENIED** in part as follows:

1. Plaintiff's negligence claim asserted against Defendants Nuss, Domingeuz, Sierra, Gonzalez, and Duvall, and Plaintiff's negligence claims related to the defendants' failure to protect T.T., failure to investigate T.T.'s requests to be kept away from other residents, and failure to respond in a timely manner to the November 6, 2015, attack are dismissed without prejudice for lack of subject matter jurisdiction for  failure to comply with the CGIA's notice requirements;

2. Plaintiff's claims against the Colorado Department of Human Services, Division of Youth Corrections, are dismissed without prejudice for lack of subject matter jurisdiction as barred by Eleventh Amendment immunity;

3. Plaintiff's Failure to Protect claim asserted against Defendant Penna, Failure to Provide Medical Care claim asserted against Defendant Sierra, and all constitutional claims asserted against Defendants Nuss, Dominguez, Duvall, Gonzalez, and Vanderpuil are dismissed with prejudice for failure to allege their personal participation, and the defendants are granted qualified immunity on the claims;

4. Plaintiff's Failure to Protect claim asserted against Defendant Sierra and Plaintiff's claims against Defendant John Doe are dismissed with prejudice for failure to state a claim upon which relief can be granted, and the defendants are granted qualified immunity on the claims;

5. The case will proceed against only Defendant Penna on Plaintiff's Failure to Provide Medical Care and Treatment and Negligence claims.

It is further

**ORDERED** that a Scheduling Conference will be held on **April 4, 2018**, **at 10:00 a.m.**, in the Colorado Springs courtroom, **Suite 1000, 212 N. Wahsatch Avenue,**

**Colorado Springs, Colorado.** The parties shall file their proposed Scheduling Order no later than **March 28, 2018**.

Dated this 13th day of March, 2018.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge